No. 38,692

BERNICE M. HOLCOMB, Widow of Lionel Holcomb, Deceased, *Appellee*, v. WILLIAM E. MEEDS and SYLVIA E. BRUGGER, Partners, doing business as Baxter Courts, a partnership, *Appellants*.

(246 P. 2d 239)

Opinion filed July 3, 1952.

*Grant Waggoner*, of Baxter Springs, argued the cause, and *C. R. Stauffacher*, of Columbus, was with him on the briefs for appellants.

*Sylvan Bruner* and *Pete Farabi*, both of Pittsburg, argued the cause, and *L. M. Resler* and *Morris Matuska*, both of Pittsburg, and *Paul Armstrong* and *Robert T. Patterson*, both of Columbus, were with them on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for an alleged wrongful death. After the issues were made up the parties in writing stipulated the facts. A trial by jury was waived and a trial by the court was had, resulting in a judgment for plaintiff. Defendants have appealed.

The pertinent facts as stipulated may be summarized or quoted as follows: The deceased, Lionel Holcomb, his wife, the plaintiff herein, and their son David, about six months old, resided in Joplin, Mo., about fourteen miles east of Baxter Springs, Kan. The defendants, as partners, owned and operated nine tourist cabins and courts known as the Baxter Courts, located about a mile south of Baxter Springs, and held themselves out to the public as engaged in the business of furnishing accommodations for lodging of travelers and transient guests for compensation.

On January 2, 1950, about two o'clock a. m., Lionel Holcomb went to the Baxter Courts and requested accommodations of the defendant Meeds, who offered two cabins, No. 3 at $3 and No. 6 at $2. Holcomb accepted Cabin No. 6 and paid defendant Meeds $2 and went to the cabin unaccompanied by either of the defendants. The person accompanying Holcomb did not go to the office with him. Defendants did not know the parties were not husband and wife until after their bodies were found on January 3. Holcomb did not sign the register at the tourist camp at the time the cabin was assigned to him.

"Said cabin was approximately fourteen feet by ten feet, with its length east and west, having one door at the east end, and two windows, one on the south side and one on the west end and a toilet room in the southwest corner with a six inch vent in the ceiling; that when rented the south window was open; that said room was equipped with what is known as a radiant natural gas heater, approximately sixteen inches tall, and eighteen inches in width; that heater being open and not connected with any chimney or other outlet or combination of out-lets. That the stove, furniture and other equipment of said cabin was the same as had been in use in said cabin for several years prior thereto. That said radiant gas heater was the only equipment by which said cabin was heated. That at the time Lionel Holcomb rented said cabin, the outside temperature was between 55 and 60 degrees fahrenheit, and that the temperature during the remainder of said night and the following day ranged between 55 and 70 degrees fahrenheit. That during the afternoon of January 3rd, the weather turned cold, accompanied by sleet and snow."

Sometime after 5:00 o'clock p. m. on January 3, 1950, Lionel Holcomb and a woman, later identified as Ruth Beets, unmarried, a resident of Quapaw, Okla., about five miles southwest from the cabins, were found dead in Cabin No. 6. His nude body was lying on the floor with his head not far from the door. Her body, nude except for a brassiere, was lying on the bed. The top bed coverings were on the end of the bed. An investigation made by the coroner and an attending physician disclosed that both of them died as a result of carbon monoxide poisoning. The condition of the bodies indicated that they died shortly after they occupied the cabin. An investigation made by the Baxter Springs police officers and two troopers of the Kansas Highway Patrol disclosed no evidence of violence, of foul play, or of intoxication, but two empty beer bottles were found in the back seat of Holcomb's car and there were two or three beer cans in the waste paper basket. Sometime later a gin bottle was found under the mattress near the head of the bed. The radiant gas heater was operating with medium flame.

In effect at all the times above mentioned were our statutes (G. S. 1949, 36-129 and 36-130). The pertinent portions of the first of these sections reads:

"All gas stoves in any public building, resort, hotel, restaurant, tourist camp and other similar public places in the state of Kansas shall be equipped with metal nonflexible connections and shall be properly connected with a chimney or other outlet or combination of outlets. . . ." The next section provides a penalty for the violation of this section.

In deciding the case the trial court stated:

"Under the pleadings and agreed statement of facts, three main questions are presented, first, the liability of a cabin camp proprietor for negligence where a person enters for an immoral or illegal purpose, second, contributory negligence, and third, the amount of damages, if any."

Shortly stated, in deciding the first question the court held that the immoral or illegal purpose of Lionel Holcomb in renting the cabin did not cause his death; that the cause of death was the negligent and illegal conduct of defendants in having the radiant natural gas heater open and not connected with any chimney or other outlet or combination of outlets. As to the second question the court found no contributory negligence on the part of Lionel Holcomb which contributed to his death, and on the third question the court found the amount of damages to be $8,000, for which judgment was rendered. In this court no complaint is made of the amount of the verdict if the plaintiff was entitled to recover; hence, we need to give it no more attention.

Defendants filed a motion for a new trial upon two grounds:

"FIRST: That the decision and judgment was given under the influence of passion or prejudice.

"SECOND: That the judgment and decision is in whole or in part contrary to the evidence."

This motion for a new trial was duly presented to and considered by the court and was overruled. Defendants appealed and set out the following specification of errors:

"First: The trial court erred in its decision and judgment for the reason that the decision and judgment was given by the trial court under the influence of passion and prejudice.

"Second: The court erred in rendering the judgment and decision for the reason that the judgment and decision is in whole or in part contrary to the evidence."

In this court appellants present the following questions for consideration by the court:

"(A) Does the law of this state make any differentiation between the liability of an innkeeper to legitimate guests and those who occupy and use the premises for illegal and immoral purposes?

"(B) Do the facts agreed upon in this case show such active negligence on the part of the appellants as to render them liable in damages?

"(C) Do the facts agreed upon in this case show the deceased, Lionel Holcomb, was guilty of contributory negligence?

"(D) Does the judgment of the trial court based upon an agreed statement of facts and without the necessity of weighing conflicting testimony indicate that it was rendered under the influence of passion and prejudice?"

As to question "(A)" appellants frankly state, "The question is a new one in this state." It appears that no statute enacted by our legislature and no decision of this court bear directly upon the question. We do note that our statute (G. S. 1949, chapter 36), pertaining to hotels, lodging houses and restaurants, which is applicable to the cabin court operated by defendants since it has more than five rooms used for the accommodation of transient guests, although quite comprehensive, has no section pertaining to this question. It does have a section (36-206) pertaining to "Fraud or cheating in obtaining accommodations." But this has to do with an intent to defraud the owner in failing to pay for the accommodation. From this it may be concluded that members of the legislature never thought of the point raised by appellants or purposely omitted it from the statute. It does include the section (36-129) requiring gas stove connections, the pertinent portions of which have been previously quoted.

Appellants cite and rely heavily on *Curtis v. Murphy*, 63 Wis. 4, 22 N. W. 825 (1885). The facts in that case were that about 12:00 o'clock at night of March 13, 1882, plaintiff came to the hotel with a disreputable woman, whom he had met on the streets and whose name he did not know, and registered as Thomas Curtis and wife and called for a room, which was assigned to him by the night clerk. He noticed at the top of the register a statement to the effect that all money and jewels should be given to the proprietor. The clerk informed him the proprietor was in bed. Curtis thereupon handed to the clerk $102 for safe keeping and took a receipt, which read: "I. O. U. $102," signed by the clerk. That night the clerk absconded with the money. Curtis sued the proprietor of the hotel for that amount. There was a state statute then in force which placed a special liability on the proprietor of a hotel for the safe keeping of money or jewels left with him. The trial court concluded

plaintiff could not recover because the money was not left with the proprietor. The supreme court thought that was a too strict interpretation of the law, but held that since Curtis was renting the room for an immoral purpose he could not recover. A careful search of the Citator discloses no case in which the Wisconsin supreme court has followed this case on that point. The case has been criticized as being unsound by Beale on Innkeepers and Hotels. It should be noted that this was not an action in tort; it was an action to recover money which was left with the hotel clerk. In this respect it is much like the case of *Arcade Hotel Co. v. Wiatt,* 44 Oh. St. 32, 4 N. E. 398, and our own case of *Johnson v. Reynolds,* 3 Kan. 257.

In *Lucia v. Omel,* 61 N. Y. Supp. 659, it was held:

"Plaintiff, a guest in a hotel, took a woman of ill fame to his room with him for consort, who absconded with a sum of his money. Plaintiff then requested the hotel clerk to keep the remainder of his money for him, but the clerk refused to·do so, and, after plaintiff went back to his room, the balance of his money was stolen from him. *Held,* that plaintiff's misconduct and immorality did not bar him from recovery for the balance so subsequently stolen."

In the opinion ( p. 660 ) it was said:

"That the plaintiff was a guest in the defendant's hotel cannot be denied, unless his taking the strumpet to his room deprived him of his rights as a guest. In *Curtis v. Murphy,* 63 Wis. 4, 22 N. W. 825, it was held that, where a man took a woman to a hotel for the purpose of prostitution, he did not thereby acquire the rights of a guest. Assuming this decision to be correct, it is not a bar to the plaintiff's rights in this case. If he had been robbed while occupying his room with the strumpet, the decision cited would apply. If he had been robbed by the strumpet with whom he associated, we would be entirely clear that his loss would be the result of his own negligence and misconduct, and thus preclude a recovery against the landlord within the general rule, even apart from the authority of the Wisconsin case. But the misconduct and immorality of the plaintiff had ceased before he met with his loss. We cannot see how that previous immorality affected his subsequent ·status as a guest in the hotel."

In *Commonwealth v. Regan,* 182 Mass. 22, 64 N. E. 407, a hotel keeper had a license to supply liquor on Sunday to "guests who have resorted to his house for food or lodging." He was prosecuted for selling liquor on Sunday to persons who first had ordered and been served with food for which a separate charge was made and which was paid for. The trial court instructed that if a man "ordered a turkey dinner, still he would not be a guest resorting to the hotel for food within the meaning of the statute if his object in

going there was to get the liquor and his ordering the food a mere means of obtaining it." In reversing a conviction the supreme judicial court held: (headnote in N. E.).

". . . the mere fact that the undisclosed intention of a person in making a substantial purchase of food and eating it is to obtain liquor is not enough to destroy the protection of the statute."

In the opinion it was said:

"According to the common usage of English speech, the word 'guest' signifies a relation determined by outward circumstances, not by inward intent. . . . The proposition may be illustrated further by the alternative case of guests who have resorted to the house for lodging. It hardly would be maintained that a person did not resort to the inn for that purpose because the object of his lodging there was fornication or to concoct a scheme for housebreaking. . . ."

In *Jones v. Bland,* 182 N. C. 70, 108 S. E. 344, in the opinion (p. 72) the court said:

"It is earnestly urged for error that his Honor charged the jury in part on the first issue that if they should find that Jones and Troy were on the way to Troy's room for the purpose of playing cards for money they should answer the first issue for defendant's the objection being that such unlawful purpose, even if established, could in no legal sense be considered as the proximate or contributing cause of plaintiff's injury. As an abstract proposition, considered entirely apart from the proprietary rights of the defendant as owner and in the management of the property, the position embodied in this objection should be upheld. In *Sutton v. The Town of Wauwatosa,* 29 Wis., 1 *Chief Justice Dixon,* in an opinion of great force and learning, approves and sustains the principle that 'the fact that a plaintiff at the time he suffers injury to his person and property from the negligence of the defendant was doing some unlawful act will not prevent a recovery unless the act was of such character as would voluntarily tend to produce the injury.' That is, unless the very unlawfulness of the act would have that tendency. And the principle so stated is fully recognized in this State as in accord with the better considered authorities on the subject. *Ferrell v. R. R.,* 172 N. C. 682; *McNeill v. R. R.,* 135 N. C. 682; *Waters v. R. R.,* 110 N. C., 338; Watson on Damages for Personal Injuries, sec. 230 *et seq.* to sec. 237."

It was further held, however, that an instruction must be considered and interpreted with reference to the material facts submitted for decision, and that one who enters a hotel for an ulterior purpose and who goes beyond the scope and purpose of the invitation and wanders into some remote portion of the premises not covered by the invitation, where there is no reason to expect him to go, is not an invitee, toward whom the hotel proprietor is required to exercise the duty of ordinary care, but is a trespasser or a mere licensee, whom the proprietor owes no duty except not to willfully or wantonly injure him.

In *Tomko v. Feldman,* Appellant, 128 Pa. Super. 429, 194 Atl. 338, plaintiff sued the proprietor of the hotel to recover damages for the death of his wife, age twenty-two years, and his daughter, three years and nine months of age, and alleged the deaths were caused by the negligence of defendant in failing to provide a safe method of heating the room occupied by plaintiff's wife and daughter. The evidence disclosed that Mrs. Tomko and her daughter entered the hotel between 1:00 and 2:00 o'clock a. m. on February 22, 1934, accompanied by a Mr. Davis, who registered as Fred Davis and wife. Plaintiff and his wife were known by defendant and his son, who assigned a room to Mr. Davis, Mrs. Tomko and the child. The temperature was ten to fifteen degrees above zero. The room was heated with a gas stove which had no means of carrying away the fumes generated by the combustion of gas in the heater. Between 3:00 and 3:30 o'clock p. m. on the same date the room was entered. Mrs. Tomko and the baby were found in bed and Davis on the floor. They were all dead—the deaths having occurred from two to six hours previously and having been caused by carbon monoxide poisoning, which was produced by the burning heater in the room. The syllabus reads:

"In an action in trespass for the wrongful death of plaintiff's wife and daughter, alleged to have resulted from the negligence of defendant, the operator of a hotel, in failing to provide a safe method of heating the room occupied by plaintiff's wife and daughter, the evidence was on appeal held sufficient to warrant findings that defendant was the operator of the hotel and that defendant was negligent in failing to provide a safe heating appliance for the room occupied by the decedents. The evidence warranted the jury in finding that, if the room was procured for an unlawful purpose, such purpose was known to defendant's servant in charge, and the parties were not subject, under the circumstances, to the rule applicable to trespassers. Defendant was liable for the failure to exercise ordinary care for the condition and operation of his hotel. It was defendant's duty to furnish not only safe premises, but also to provide the necessary equipment in the room for use by its occupants, and such as could be used by them in the ordinary and reasonable way without danger."

In the opinion (pp. 434, 435), the court had occasion to say:

"In its opinion the court below indicated that plaintiff was not entitled to recover for the death of his wife because the evidence established that the use of the room was illicit, and that she was therefore a trespasser not entitled to the degree of care imposed on an innkeeper in relation to guests, but that such evidence could not prevail as to the child, and that the verdict was justified for the liability of defendant for the death of the child alone. We are not in accord with these statements of the court below. The court below did not disturb the verdict, but directed that judgment be entered thereon. Of course, the appeal is not from what the court has said in its opinion, but from the judgment entered

on the jury's verdict. It affords no comfort to appellant that the court below arrived at what we believe to be a correct conclusion by reasoning which does not have our approval. . . ."

In *Rapee v. Beacon Hotel Corp.*, 293 N. Y. 196, 56 N. E. 2d 548, plaintiff and his fiancee registered at defendant's hotel as husband and wife under an assumed name and went out for the evening. On returning at an early hour the next morning there was no response to their repeated ringing of the elevator bell. Plaintiff leaned against the shaft door of the elevator to listen for what seemed to be the sound of the approaching car. His weight caused the door to slide open and he fell in the pit below. He sued for damages for personal injuries and recovered judgment. At the trial the court charged the jury:

"It was the duty of the defendant to see that the elevator doors were properly closed. The gates or doors leading to the shafts of the elevator were required to be locked or bolted or securely fastened on the shaft side, that is, from the inside. . . . The duty which I have charged you the law imposes upon the defendant in the maintenance and operation of passenger elevators is not diminished by the fact that the plaintiff may have intended to occupy a room with a female not his wife or that he imposed upon the hotel authorities by misrepresenting some person to be his wife, or by making use of an assumed name. I charge you that for the purposes of your consideration of this case the plaintiff was a guest of the hotel and that the obligation of due care as I have charged it to you was applicable to this plaintiff in the same manner as to other guests and to other persons lawfully on the premises."

On appeal the charge was approved and the judgment affirmed.

*Meador v. Hotel Grover et al.*, 193 Miss. 392, 9 So. 2d 782, was an action by an administrator for the wrongful death of his intestate, who was fatally injured at an elevator in a hotel while going to a room of a prostitute for immoral purposes. A demurrer was sustained to his petition. The supreme court reversed and used this language:

"For a plaintiff to be barred of an action for negligent injury under the principle of public policy implicit in the maxim ex dolo malo non oritur actio (a maxim meaning: "A right of action cannot arise out of fraud." Similarly rendered: "Out of fraud no action arises; fraud never gives a right of action. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act."—Black L. D., citing Broom Max. p. 729; 33 C. J. S. 117.), his injury must have been suffered while and as a proximate result of committing an illegal act. The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. Where the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted. *Western*

*Union Tel. Co. v. McLaurin,* 108 Miss. 273, 66 So. 739, L. R. A. 1915C, 487; *Norris v. Litchfield,* 35 N. H. 271, 277, 69 Am. Dec. 546; *Dudley v. Northhampton Street Ry. Co.,* 202 Mass. 443, 89 N. E. 25, 23 L. R. A., N. S., 561; *Cohen v. Manuel,* 91 Me. 274, 39 A. 1030, 40 L. R. A. 491, 64 Am. St. Rep. 225; *McGrath v. Merwin,* 112 Mass. 467, 17 Am. Rep. 119; *Newcomb v. Boston Protective Dept.,* 146 Mass. 596, 16 N. E. 555, 4 Am. St. Rep. 354; *Welch v. Wesson,* 6 Gray, Mass., 505; *Cox v. Cook,* 14 Allen, Mass., 165; *Whitley v. Holmes,* 164 Miss. 423, 144 So. 48; *Steele v. Burkhardt,* 104 Steele, Mass., 59, 6 Am. Rep. 191; *Moran v. Dickinson,* 204 Mass. 559, 90 N. E. 1150, 48 L. R. A., N. S., 675; *Malloy v. American Hide & Leather Co.,* 1 Cir., 185 F. 776; *Faggart v. Rowe,* 33 Ga. App. 423, 126 S. E. 731; *Hall v. Corcoran,* 107 Mass. 251, 9 Am. Rep. 30; *Kimballs Case,* 132 Me. 193, 168 At. 871; *Johnson v. Boston & M. R. R.,* 83 N. H. 350, 143 A. 516, 61 A. L. R. 1178; *Martinez v. Rein* (La. App.), 146 So. 787; 1 Cooley Torts (4 Ed.), secs. 90, 92; 2 Wigmore, Select Cases on Law of Torts, pp. 171 *et seq;* Chapin, Torts, p. 111; 38 Am. Jur. Negligence, secs. 169, 214; 18 Harvard Law Review 505."

The trial court held there was no causal connection between the misconduct of plaintiff's husband and his death. We concur in that view. In *Parker v. Kirkwood,* 134 Kan. 749, 752, 8 P. 2d 340, the court had occasion to use this language:

"The hotel keeper is not an insurer, but it is his duty to exercise reasonable and ordinary care for the safety, convenience and comfort of his guests."

Many other cases to the same effect are digested in the General Digest under Innkeeper, Key No. 10. There is no question here about the negligence of the defendants. The only heating facility provided for this cabin was a gas stove which gave off poisonous gases in violation of statute. Indeed, it would have been negligence if there had been no statute.

There is not much else to this lawsuit. Counsel for appellants complain the court did not find Lionel Holcomb guilty of contributory negligence and in their brief they state: "It is definitely agreed that when the bodies were found, the south window was closed." We find no agreement on that point in the stipulated facts. Aside from that, it is difficult to see that the closing of the window at a time when the temperature was fifty-five degrees would violate any degree of standard of care. Neither do we think that the judgment of the trial court, based upon an agreed statement of facts without the necessity of weighing conflicting testimony, indicated that it was rendered under the influence of passion and prejudice. Certainly the parties contemplated that the court would predicate its judgment upon the stipulated facts. We find no error in the record.

The judgment of the trial court is affirmed.