212 N.J. Super. 447 (1985)
515 A.2d 296
CONSTANTIANE CHOMATOPOULOS AND MANOLIS TZIRAKIS, PLAINTIFFS,
v.
ROMA DeNOTTE SOCIAL CLUB, ROSARIO FARRO, INDIVIDUALLY AND T/A ROMA DENOTTE SOCIAL CLUB, 285 MAIN STREET CORP., A NEW JERSEY CORPORATION AND WILLIAM GANTZ, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided October 8, 1985.
*449 Marvin S. Davidson for plaintiffs.
John A. Gonnella, for defendant Rosario Farro.
YANOFF, J.S.C. (retired and temporarily assigned on recall).
The altercation which gives rise to the interesting problem in this case occurred on September 14, 1982 immediately outside a gambling establishment conducted by defendant, Rosario Farro, at 285 Main Street, West Orange, New Jersey.
This case came to me as a proof case because of default on the part of defendant. For reasons, equitable in nature, which need not be recounted here, I vacated the default for the purpose of hearing testimony as to whether plaintiff could prove a cause of action.
On May 31, 1983 Constantiane Chomatopoulos filed suit naming William Gantz, Rosario Farro, Roma DeNotte Social Club and 285 Main Street Corp., the lessor of the premises, as defendants. The case has been reduced to an action against Rosario Farro, who concededly was the proprietor of the gambling establishment conducted under the name of Roma DeNotte Social Club.
While Farro depicted himself as a self-employed builder, which may be a fact, it is also a fact that he conducted a place where people met regularly for the purpose of gambling. Defendant called it a "club," but it was a club where there were no dues and apparently no one was denied admission. Farro testified that he maintained the club by contributions from its patrons who engaged in the gambling activities, and not by a specified percentage of the "take." I need not decide whether this is true because the crucial fact is that the club was a center for gambling activity, not how it was financed. Therefore, I conclude, for the purposes of this case, that Farro was "promoting gambling" in violation of N.J.S.A. 2C:37-2a.
On the day in question, Constantiane Chomatopoulos, Manolis Tziriakis and William Gantz were at the Roma DeNotte. Gantz *450 and Tziriakis engaged in a Greek game, similar to "dice," called "barbute." At the time, Chomatopoulos was either playing cards or at another dice table. Gantz and Tziriakis got into an argument over the amount of a bet. Sometime later, Gantz and Tziriakis resumed their argument.
At Gantz's invitation the two went outside where Gantz slashed Tziriakis's throat. Chomatopoulos followed them when he heard the commotion, he said, as a "peacemaker." He was not aware that Tziriakis had been stabbed. Immediately outside the premises Gantz stabbed Chomatopoulos four times. Then Gantz followed Chomatopoulos across the street, where he stabbed him four more times.
Unquestionably, plaintiff was a business invitee of the club. He had gambled there on prior occasions. It was not clear whether he had done so on this occasion, but his presence added to the club revenues.
In determining that conduct of the club was a business, it matters not whether Farro was compensated by a stipulated percentage of the wager, or whether he received what he called "voluntary contributions" from the players. This was the means by which Farro maintained and conducted the gambling establishment. Farro testified that he made no profit from the operation of the establishment, but devoted the entire profit to a Christmas party for underprivileged children. Assuming, although I admit doubt on the subject, that the entire profits of the establishment were used as he claimed, it would still be a business enterprise. If an entrepreneur chooses to devote his profits to a charitable purpose, it is, nonetheless, his property which he is giving away.
Butler v. Acme Markets, Inc., 89 N.J. 270 (1982) elucidates the pertinent principles of liability:
The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation. Brody v. Albert Lifson & Sons, 17 N.J. 383, 389 (1955); Genovay v. Fox, 50 N.J. Super. 538, 549 (App.Div. 1958), *451 rev'd on other grounds, 29 N.J. 436 (1959). The measure of that care has been described as `due care under all the circumstances.' Bozza v. Vornado, Inc., 42 N.J. 355 359 (1964); 2 Harper & James, Law of Torts (1956) § 27.12 at 1487. `Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others.' Rappaport v. Nichols, 31 N.J. 188, 201 (1959). If the reasonably prudent person would foresee danger resulting from another's actions are beyond defendant's control does not preclude liability. [at 275-276][1]
In Butler there had been a history of prior criminal acts in the shopping center in question which should have alerted the operator of the shopping center to the necessity for establishing proper security. There is no such specific record in this case. However, Butler's ruling is bottomed on the general obligation of care of a storekeeper, not the specific circumstances involved. The ultimate outcome in Butler was a remand to the trial court for a trial in which the specific circumstances could be developed. So, in this case, Farro is in the position of the operator of a business enterprise to which customers are invited. He owes the same duty of care as does the storekeeper.
Brown v. Racquet Club of Bricktown, 95 N.J. 280, 284 (1984), while it deals primarily with the question of res ipsa loquitur, supports the general principle that the ultimate issue is whether the business invitor has provided the business invitee with a safe place to do that which was reasonably within the scope of the business invitation.
I see no reason why the fact that defendant was engaged in an illegal enterprise should diminish the scope of liability for breach of a duty of care. On the contrary, as will appear hereafter, it may well increase it. At any rate, the illegality of the enterprise does not exonerate the wrongdoer from responsibility for exercise of due care. Tomko v. Feldman, 128 Pa.Super. 429, 194 A. 338 (Sup.Ct. 1937), cited in *452 Holcomb v. Meeds, 173 Kan. 321, 246 P.2d 239, 243 (Sup.Ct. 1952); Shiroma v. Itano, 10 Ill. App.2d 428, 135 N.E.2d 123 (App.Ct. 1956).
On the issue of whether participation by a plaintiff in illegal gambling activities is a bar in an action for personal injuries, see Annotation, "Participation in Gambling Activities as Bar to Action for Personal Injury or Death," 77 A.L.R.2d 961 (1961).
The guiding principle is set forth in 2 Restatement, Torts 2d, § 889 at 352 (1979):
One is not barred from recovery for an interference with his legally protected interests merely because at the time of the interference he was committing a tort or a crime or, in case of an interference with his title to or possession of lands or chattels, because it was tortious or illegal for him to have the title or possession.
....

Negligent harms by third persons. The fact that one is doing an illegal act does not prevent him from maintaining an action for harm caused by the negligence or abnormally dangerous activities of a third person. Nevertheless, if the injured person has violated a statute designed to prevent a certain type of risk, he is barred from recovery for harm caused by violation of the statute if, but only if, the harm resulted from a risk of the type against which the statute was intended to give protection. [Id., § 889 at 352, Comment b]
There are, however, questions of causation. If the illegal conduct was the cause of the injury, plaintiff, under some circumstances, is barred. See Shiroma v. Itano, supra. But if the violation of law is merely the occasion, rather than a contributing cause of the injury, recovery is not barred. See Holcomb v. Meeds, supra.
As stated in the annotation in 77 A.L.R.2d, supra:
In a majority of the cases in which it has been contended that a plaintiff's action for personal injuries was barred because of his participation in gambling activities, it has been held that the action was not barred in the absence of a causal relation between the illegal act and the injuries sustained. [at 961]
N.J. Mfgrs. Ins. Co. v. McDermott, 201 N.J. Super. 251 (Law Div. 1985), is illustrative of the applicable principles. Judge Coburn there held that a passenger in an uninsured getaway car could not recover under his mother's policy under the uninsured motorist clause. Plaintiff was injured when the *453 driver sped away from the scene of a burglary when an alarm sounded. Pointing out that the right to recovery under the uninsured motorist clause depends on the existence of a viable cause of action, Judge Coburn ruled that plaintiff did not have a claim against the driver because his negligent operation of a van was a direct result of the unlawful activity in which plaintiff was an accomplice.
In Kelly v. Gwinnell, 96 N.J. 538 (1984) and Rosenblum v. Adler, 93 N.J. 324 (1983), the Court made it clear that negligence and proximate cause were defined by parallel principles. In Kelly the Chief Justice said:
`Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others.' [citations omitted] ... When negligent conduct creates such a risk, setting off foreseeable consequences that lead to plaintiff's injury, the conduct is deemed the proximate cause of the injury. `(A) tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries.' [96 N.J. at 543]
In Rosenblum, Justice Schreiber, in an opinion holding that accountants may be liable to third parties who rely on their reports, declared:
There remains to be considered whether the public interest will be served by a proposition holding an auditor responsible for negligence to those persons who the auditor should reasonably foresee will be given the audit to rely upon and do in fact place such reliance on the audit to their detriment. Should there be such a duty imposed? Chief Justice Weintraub in Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583[] (1962), explained the judicial analysis that must be made:
`Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.' [93 N.J. at 341]
It is not necessary that the particular consequences of the negligent act be foreseen so long as it is foreseeable that some injury may ensue. Mikrut v. Pellow, 65 N.J. Super. 14, 19 (App.Div. 1961). A tortfeasor is not exonerated from liability by the fact that the injurious act which occurred was criminal. "[P]roximate cause can be established by demonstrating that according to the common experience of mankind the resulting *454 injury was a reasonably foreseeable consequence of the negligent act." Braitman v. Overlook Terrace Corp., 132 N.J. Super. 51, 55 (App.Div. 1974).
Having set forth what I deem to be the applicable principles, it remains to be determined whether defendant was negligent and whether the negligence was a proximate cause of the injuries sustained by plaintiff.
The operator of a gambling establishment has reason to foresee that quarrels may erupt at the gambling table. In regulating casino gambling, the Legislature made explicit provision for commission review of "private security force procedure." N.J.S.A. 5:12-99a(14). I conclude that there was negligence in this case on the part of Farro. While it is true that there was no evidence of prior incidents of violence on the premises, it is reasonable to conclude that where people engage in illegal gambling there is a sufficient probability that there may be outbreaks of violence to make it necessary to establish some kind of security system.
I conclude also that Farro's negligence was a proximate cause of the injury. The altercation occurred within the club premises, and spilled over to the street. The facts show that Farro was aware of it, and did nothing to intervene. When an oral argument leads to an invitation to go outside, violence is usually the object. Here the usual occurred.
There will, therefore, be a verdict in favor of plaintiff on the issue of liability. The case will be set down for trial as to damages.
NOTES
[1] Defendant relies upon Genovay v. Fox, 50 N.J. Super. 538 (App.Div. 1958). To the extent that the case is pertinent, it supports plaintiff's position. In any event, the reversal in 29 N.J. 436 (1959) makes it poor authority.