693 A.2d 510

ROBERT P. MORRIS, INDIVIDUALLY AND AS GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF AILEEN D. MORRIS, DECEASED, AND AS GUARDIAN AD LITEM OF ROBERT PETER MORRIS, JR., RENEE PATRICIA MORRIS, BEVERLY DOROTHY MORRIS, YVETTE MARGARET MORRIS, ROBYN PEARL MORRIS, SHAWN EDGAR DONELSON, AND DOUGLAS HECTOR DONELSON, INFANTS, PLAINTIFF–RESPONDENT, v. KRAUSZER'S FOOD STORES, INC., KRAUSZER'S REALTY CO., INC., KRAUSZER'S DAIRY, INC., GARDEN STATE FARMS, MIRONOV BROTHERS, A N.J. PARTNERSHIP, COVERED BRIDGE, INC., JOHN DOES 1 THROUGH 5, AND JOHN DOES, INC., 1 THROUGH 5, DEFENDANTS, AND CONVENIENCE MANAGEMENT SERVICES, INC., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 28, 1997—Decided May 9, 1997.

Before Judges PRESSLER, HUMPHREYS and WECKER.

*Paul A. Lisovicz* argued the cause for appellant (*McElroy, Deutsch & Mulvaney,* attorneys; *Mr. Lisovicz,* on the brief).

*Ronald B. Grayzel* argued the cause for respondent (*Levinson, Axelrod, Wheaton & Grayzel,* attorneys; *Laura M. LeWinn,* on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

Aileen Morris, a mother of nine children, was shot to death by a robber in 1989 while working as a clerk at a Krauszer's convenience store. The store was owned by defendant Convenience Management Services, Inc. ("CMSI") and operated by Dairy Stores. The jury returned a verdict against CMSI.

CMSI appeals, contending: (1) it had no duty under the facts to protect the decedent against the criminal acts of others; (2) it was immune from liability under the workers' compensation act; (3) the damage award was excessive; (4) the jury charge was inaccurate; (5) a jury interrogatory was improper; (6) certain evidence should not have been admitted; and (7) newly discovered evidence requires a limited remand for consideration of a *R.* 4:50–1 motion.

We have thoroughly reviewed the record and considered the arguments presented. We conclude that under the facts in this case CMSI had a duty to protect the decedent against the criminal acts of others. Whether that duty was breached was properly presented to the jury. The judgment is affirmed.

I

The murder occurred in the late morning. The store was located on Alston Road in Kendall Park, about one-tenth of a mile

from Route 27. Across the street from the store was a strip mall. Behind the store was a hilly tract of undeveloped land with numerous paths used by motorcyclists and bicyclists. On the morning of the murder, the store had a steady flow of customers.

CMSI contends that it owed no duty to Morris because the armed robbery and shooting were not foreseeable. The robbery occurred in the daylight hours. CMSI contends that no evidence was presented that the area was a high crime area or that the store had previously been robbed.

■ The existence of a legal duty is "generally considered" a question of law for the court to decide. *Carvalho v. Toll Bros. and Developers*, 143 *N.J.* 565, 572, 675 *A.*2d 209 (1996). In a recent case, the New Jersey Supreme Court said:

Ultimately, the determination of the existence of a duty is a question of fairness and public policy. Foreseeability of injury to another is important, but not dispositive. Fairness, not foreseeability alone, is the test. Relevant to the determination of the fairness of the imposition of a duty on a landowner is the nature of the risk, the relationship of the parties, the opportunity to exercise care, and the effect on the public of the imposition of the duty.

Consistent with that analysis, we have found a landlord liable to a tenant for damages resulting from a burglary when the landlord failed to replace a broken dead-bolt lock on the tenant's apartment. . . .

We likewise have imposed liability on a landlord who provides inadequate security for common areas of rental premises for the failure to prevent a criminal assault on a tenant. . . .

Similarly, we have held that the owner of a supermarket may be liable to a customer who is mugged at night in the market's parking lot. . . .

*Uniting [these decisions] is the premise that landlords and business owners should be liable for foreseeable injuries that occur on their premises. The underlying rationale is that they are in the best position to control the risk of harm. Ownership or control of the premises, for example, enables a party to prevent the harm.*

[*Kuzmicz v. Ivy Hill Park Apartments, Inc.*, 147 *N.J.* 510, 515–17, 688 *A.*2d 1018 (1997) (citations omitted) (emphasis added).]

The duty of the owner or possessor of land to protect business invitees from foreseeable harm is well established. The Supreme Court has held that the determination of whether the business owner has breached that duty is a jury question. *Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 280, 445 *A.*2d 1141 (1982).

■ The *Restatement (Second) of Torts* is in accord with the above principles. Section 344 of the *Restatement* provides:

[a] possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, *or intentional harmful acts of third parties* or animals, and by the failure to possess or to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

[*Restatement (Second) of Torts* § 344 (emphasis added).]

■ An employee of a business operated on the premises is a member of the public for the purposes of section 344 of the *Restatement.* The decedent was an employee of Dairy Stores, a subsidiary of CMSI. As such, she is considered a business invitee and thereby falls within the class of persons to whom the owner or lessor of the premises owes a duty. *See Restatement (Second) of Torts,* § 332(3) & cmt. (j).

In determining the foreseeability of criminal attack, some courts have adopted the prior similar incidents rule or a variation there-of. *See Clohesy v. Food Circus Supermarkets, Inc.,* 293 *N.J.Super.* 217, 221, 679 *A.*2d 1230 (App.Div.1996). Other courts have adopted the totality of circumstances approach. *See id.* at 235–39, 679 *A.*2d 1230 (Humphreys, J.A.D., dissenting) (citing numerous authorities which adopt this approach and reject the "prior similar incidents" rule).

■ We conclude for the reasons expressed in the dissenting opinion in *Clohesy* that "[t]he totality of circumstances approach best accords with the fundamental purposes of tort law as set forth in *Butler* and exemplified by the 'solid and growing national trend' of authority." *Clohesy, supra,* 293 *N.J.Super.* at 243, 679 *A.*2d 1230 (dissenting opinion) (quoting *Sharp v. W.H. Moore, Inc.,* 118 *Idaho* 297, 796 *P.*2d 506, 510 (1990)).

■ Applying the totality of circumstances standard, we find that under the facts of this case the trial judge properly concluded that a criminal incident was foreseeable and therefore, a duty existed to provide a reasonable measure of protection for employ-

ees at the store. Substantial evidence was presented as to the foreseeability of a criminal incident. Plaintiff presented the testimony of an expert in the security field, and the testimony of a former employee at other Krauszer's stores. The expert testified about the inherent risk of robbery and violent crime in the convenience store business. He presented FBI statistics which showed a dramatic increase in convenience store robberies nation-wide from 29,000 in 1987 to 36,000 in 1989, with 623 of the 1989 robberies occurring in New Jersey. He concluded that convenience stores in New Jersey in 1989 were at risk for robberies and crimes of violence. Police reports were introduced into evidence documenting eight robberies in 1988 and 1989 at various Krauszer's stores in other central New Jersey towns.

Plaintiff's expert testified that numerous security measures should have been in effect at the Krauszer's stores. A drop safe should have been installed so that only a minimal amount of cash would be in the register at any time; interior visibility should have been enhanced; registers should have been prominently positioned; security devices such as alarms should have been installed; clear lines of sight to make a robber visible from the outside of the store should have been created; measures to encourage activity around the store should have been implemented; escape routes should have been altered; balanced lighting between the outside and the inside of the store should have been established; and employees should have been trained on security measures.

The Kendall Park Krauszer's store had a drop safe but it lacked a prominently displayed announcement which would alert robbers that there would be no more than a minimal amount of cash in the register. The expert found that there were posters on the store's windows which obscured the view of the top half of the interior and blocked the natural lighting. The poor lighting made the interior of the store too dark to be clearly visible. He testified that the clear access to paths through the undeveloped land at the rear of the store would provide ample escape routes for a robber.

The expert also stated that: an alarm system should have been installed to notify the police to respond when an employee activated the alarm; a clearly visible closed circuit television focused on the area of the register and a barrier to protect the employees should have been installed. According to the expert, the store had "rob me" written all over it. "Security measures," he said, "were a way of deterring criminals so the crime would not occur."

A former employee of Dairy Stores testified that she had worked four or five months in a Krauszer's store in another municipality in New Jersey and that she had never received training on what to do if the store was robbed. While working at the store in 1989, she was attacked by an assailant who choked her, threw her onto the floor of a back room and told her not to move or he would kill her.

After this incident, she went to work at another Krauszer's store. She was told she would not have to work alone but eventually decided to leave that job because she was left alone several times and the store did not have any security alarms or video cameras. Two years later, she went to work for another convenience store operated by another company. She testified that this store had various security precautions, including an alarm to notify the local police station of criminal activity and a ruler near the door against which employees could measure the height of patrons who entered and left the store. In addition, this store always had a minimum of three people working at any time.

The President of Dairy Stores testified on its behalf regarding security measures at the Krauszer's stores. The president said that the Krauszer's stores took the following security precautions: cash control, no more than $100 in a cash register drawer; sign placement to create a clear unobstructed view from the parking lot to the cash register; maintenance of parking lots; and an instruction to all employees to comply with the demands of an armed robber. The president said he decided not to install panic alarms in the store on the recommendation of the Director of Security for Dairy Stores.

Considering the totality of the circumstances, we conclude that a criminal attack was reasonably foreseeable and therefore a duty to protect against such an attack was present. Indeed, in this case, a criminal attack was not only foreseeable, it was foreseen. The President of Dairy Stores testified that from his reading of industry magazines, he was aware of armed robberies of convenience stores and that he had taken steps to protect against those attacks.

■ Further, the large increase in robberies of convenience stores in New Jersey and nationwide is a very significant factor. Evidence that "a particular type of commercial property has become inherently subject to violent crime" may "create the degree of foreseeability sufficient to trigger a duty to provide security guards." *Clohesy, supra,* 293 *N.J.Super.* at 226, 679 *A.*2d 1230; *see also Doud v. Las Vegas Hilton Corp.,* 109 *Nev.* 1096, 864 *P.*2d 796, 800 (1993) (casino found to have a duty to protect patrons from violent assaults based on totality of circumstances which included the nature of the casino's business and past crimes committed on the premises); *Cohen v. Southland Corp.,* 157 *Cal.App.*3d 130, 203 *Cal.Rptr.* 572, 575–78 (1984) (operating an all-night convenience store creates "an especial temptation and opportunity for criminal misconduct, thus increasing the foreseeability of injury resulting from third party misconduct in the early morning hours"); *Chomatopoulos v. Roma DeNotte Social Club,* 212 *N.J.Super.* 447, 454, 515 *A.*2d 296 (Law Div.1985) ("it is reasonable to conclude that where people engage in illegal gambling there is a sufficient probability that there may be outbreaks of violence to make it necessary to establish some kind of security system"); *cf. Sawyer v. Carter,* 71 *N.C.App.* 556, 322 *S.E.*2d 813, 817 (1984) (evidence of only a single robbery at the convenience store in the previous five years and occasional robberies of other businesses in the area was insufficient to raise a triable issue of fact), *appeal denied,* 313 *N.C.* 509, 329 *S.E.*2d 393 (1985).

As plaintiff's expert testified, the absence of security precautions renders a convenience store a tempting target for robbers.

A convenience store in New Jersey in which there are no alarms, no video-cameras, no immediate connections to the police, poor visibility, and ample escape routes significantly increases the likelihood that robbers will think such a store is an easy mark. Considering the circumstances in their entirety, CMSI had a duty to take reasonable security measures to protect its employees from criminal attack.

## II

CMSI contends that it has immunity from civil suit under the Workers' Compensation Act. *See N.J.S.A.* 34:15–8. CMSI argues that the jury's answer to an interrogatory amounted to a finding that Dairy Stores and CMSI were a single entity and thus, that CMSI was the decedent's employer.

The First Delaware Financial Group acquired the Krauszer's convenience store chain in 1988 through CMSI which was First Delaware's wholly-owned subsidiary. Thereafter, CMSI managed the Krauszer's chain of stores. This particular store was operated by Dairy Stores, a subsidiary of CMSI.

Morris was an employee of Dairy Stores. New Jersey has adopted the majority view that "corporations affiliated by stock ownership and common management with a worker's employer are not entitled to the tort immunity specifically accorded by statute to the employer only." *Volb v. G.E. Capital Corp.,* 139 *N.J.* 110, 126, 651 *A.*2d 1002 (1995). The record here supports the trial judge's finding that a parent-subsidiary relationship existed between CMSI and Dairy Stores. Consequently, under workers' compensation law, immunity cannot be used by the parent, CMSI, to bar a tort claim against it by an employee of its subsidiary. *See ibid.*

Furthermore, CMSI did not pursue this defense at trial. CMSI pleaded the defense in its answer and raised the defense in its trial brief. However, CMSI did not assert the defense in its motion to dismiss at the end of the case. Additionally, the parties

had an extensive discussion with the judge on the record concerning the jury's interrogatories and the charge. CMSI did not ask that the jury be charged as to this defense nor did CMSI object to the absence of this defense in the charge.

Further, CMSI did not ask that an interrogatory be submitted to the jury as to this defense. An interrogatory was submitted to the jury as to whether CMSI exercised sufficient control over the Krauszer's convenience store chain to be classified as the proprietor or owner of Krauszer's Kendall Park store. The jury answered "yes" to that interrogatory. However, the underlying fact issue as to the workers' compensation defense is whether a parent-subsidiary relationship existed, not whether CMSI exercised control over the Krauszer's convenience store chain. Another interrogatory inquired as to whether CMSI had assumed the lease of the store. Again, this was a question that dealt with control and responsibility, not the immunity conveyed by the workers' compensation statute. Thus, the applicability of the immunity afforded by workers' compensation law was not presented to the jury.

In post-trial motions, the defendant raised the workers' compensation defense. In arguing these motions, defense counsel (not appellate counsel) indicated that for tactical reasons, he did not include the workers' compensation defense in his motion at the end of the case. He maintained that he could wait until the jury returned the verdict before he raised this issue. We disagree.

In *Williams v. Bell Telephone Laboratories, Inc.*, 132 *N.J.* 109, 118–20, 623 *A.*2d 234 (1993), the Court held that a defense, such as the statute of limitations, could be waived even though the defense had been pleaded in the defendant's Answer. This principle is applicable here. The record strongly supports a parent-subsidiary relationship and consequently the absence of a workers' compensation defense. However, if CMSI believed there were sufficient facts for a jury to reach a contrary conclusion, CMSI should have submitted a jury interrogatory and a request to charge regarding that issue. CMSI did not and consequently waived this defense.

## III

The jury awarded $300,000 for lost wages and $1.5 million for the loss of decedent's services to her husband and children. The jury also awarded $75,000 for the decedent's pain and suffering. The total was $1,875,000. CMSI does not challenge the pain and suffering award. CMSI contends that the remainder of the award is excessive and seeks a new trial on damages.

A trial court should not disturb the amount of a verdict unless it "constitutes a manifest injustice that shocks the judicial conscience." *Carey v. Lovett,* 132 *N.J.* 44, 66, 622 *A.*2d 1279 (1993); *accord Baxter v. Fairmont Food Co.,* 74 *N.J.* 588, 596, 379 *A.*2d 225 (1977). The role of an appellate court "is even more restricted." *Carey, supra,* 132 *N.J.* at 66, 622 *A.*2d 1279. An appellate court in considering whether a verdict is excessive should show appropriate deference to the trial court's "feel" of the case. *Ibid.*

In a wrongful death case, reasonable compensation for the dependent survivors includes an amount to replace that which the decedent would have provided. *Curtis v. Finneran,* 83 *N.J.* 563, 569, 417 *A.*2d 15 (1980); *Dubil v. Labate,* 52 *N.J.* 255, 259, 245 *A.*2d 177 (1968). However, compensation for intangible services such as guidance, advice and counsel "must be confined to what the marketplace would pay a stranger with similar qualifications for performing such services." *Green v. Bittner,* 85 *N.J.* 1, 12, 424 *A.*2d 210 (1980).

The ages of the decedent's nine children at the time of her death ranged from seven to eighteen years. Plaintiff's expert calculated the loss of her services to her children at $677,500 which he based on the cost of paying someone to cook, clean, shop and launder. He valued the loss of guidance, instruction and training to her children at $45 an hour. He concluded that Morris would have been expected to provide these services until the youngest child was emancipated, which would have been another thirteen years.

■ The jury's award of $1.5 million for loss of services was substantially more than the plaintiff's expert's calculation. However, the jury was entitled on this record to find that the expert was conservative in calculating the loss of such intangible services as guidance, training and counseling for so many children.

■ The jury verdict of $300,000 for wage losses also exceeded the estimate of plaintiff's expert. However, the expert testified that his estimate was conservative. He based it on the decedent earning only $5.00 an hour for the rest of her earning years, six years part-time and fifteen years full-time. The jury could fairly have based their award on a higher estimate of the decedent's earning capacity.

The trial judge denied CMSI's motion for a new trial or a remittitur. The judge found that "in light of all the testimony presented in this trial, the jury verdict does not shock my conscience and is not manifestly unjust." We agree. The verdict while substantial does not shock our judicial conscience and will not be disturbed.

## IV

CMSI's other contentions are clearly without merit and do not warrant extensive discussion in a written opinion. *See R.* 2:11–3(e)(1)(E). We add the following brief comment.

■ CMSI argues that the jury charge did not accurately describe the corporate alter ego doctrine as to the relationship between CMSI and Dairy Stores and that the charge did not "consider the practical effect of piercing the corporate veil." This argument misses the mark. As CMSI acknowledges in its brief, this is a "premises-liability case concerning the duties that an occupier of land owes to one on the premises." The jury in answer to an interrogatory found that CMSI had assumed the lease on the store. Consequently, CMSI is liable as the owner and occupier of the store. Any error in the charge regarding the liability of CMSI as an alter ego is harmless error. *See R.* 2:10–2.

The judge's evidential rulings were within his discretion. *See Dinter v. Sears, Roebuck & Co.*, 252 *N.J.Super.* 84, 92, 599 *A.*2d 528 (App.Div.1991). We adhere to our previous ruling in our orders of February 12, 1996 that the material presented "with respect to the *R.* 4:50–1 application and newly discovered evidence shall not be considered on the present appeal" and that the *R.* 4:50–1 application may be considered in the Law Division "upon disposition of [this] appeal."

The judgment is affirmed.