293 N.J. Super. 217 (1996)
679 A.2d 1230
MARY CLOHESY, EXECUTRIX OF THE ESTATE OF KATHLEEN DALTON, DECEASED, PLAINTIFF-APPELLANT,
v.
FOOD CIRCUS SUPERMARKETS, INC., T/A TWIN COUNTY GROCERS OR FOODTOWN OF RED BANK, DEFENDANT-RESPONDENT, AND PHILIP REARDON, JR., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1996.
Decided August 9, 1996.
*219 Before Judges KING, LANDAU and HUMPHREYS.
Nicholas Caliendo argued the cause for appellant (Schottland, Aaron & Manning, attorneys; Chryssa Yaccarino, on the brief).
Jane Garrity Glass argued the cause for respondent (Garrity, Graham & Favetta, attorneys; Ms. Glass, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff Mary Clohesy, Executrix of the Estate of Kathleen Dalton, appeals from a grant of summary judgment in favor of defendant Food Circus Supermarkets, Inc., t/a Twin County Grocers or Foodtown of Red Bank (Foodtown) dismissing her complaint that alleged Foodtown's negligent failure to provide adequate security in its parking lot for the decedent, Kathleen Dalton.
Mrs. Dalton, who was seventy-nine years of age, had been shopping at the Foodtown supermarket in Red Bank during the early afternoon of July 15, 1991. As she loaded groceries into her car, an assailant, Philip Reardon, Jr., forced her into the car, covered her nose and mouth with duct tape, and drove away. Mrs. Dalton died of asphyxiation. Reardon was apprehended and later convicted of kidnapping, robbery, theft, and murder.
Plaintiff sued Foodtown and Reardon. Depositions were taken of Barry Elliott, Manager of Retail Loss Prevention for Twin County Grocers, and Philip J. Scaduto, Director of Loss Prevention for Food Circus Supermarkets.
Elliott testified that his duties primarily focused upon the prevention of illegal activities inside of New Jersey and New York *220 Foodtown stores. He had no recollection of any request to evaluate parking lot security at the Foodtown of Red Bank or the liquor store located on the premises. Elliott admitted, however, that security was hired during a period when construction materials were being stored in the Foodtown of Red Bank lot.
Scaduto was in charge of security for stores operated by Food Circus Supermarkets. Although he was responsible for parking lot problems, in his experience these consisted of little more than "shopping carts banging, carriages, basically people looking for money on dents," and "proper lighting, potholes, things like that." He did not recall any criminal activity in the parking lot of any store operated by Food Circus prior to the abduction of Mrs. Dalton.
Plaintiff's expert, William A. Torphy, provided a report evaluating security at the Foodtown of Red Bank. Torphy concluded that Foodtown deviated from industry standards of care by failing to provide adequate security, and that this failure caused the death of Mrs. Dalton. He noted the presence of a liquor store on the premises, which attracted persons to drink and "hang around." Torphy also asserted that a Mobil gas station on the edge of the parking lot served as "a gathering place for loiterers" and earned frequent attention from the police.
The Torphy report observed that the parking lot faced a side of the supermarket that had no windows, making it impossible for employees inside to scan the lot for problems. Foodtown employed no security guards to monitor the parking lot. Torphy opined that the Foodtown was "located in an area where criminal conduct could reasonably be anticipated." He concluded that Foodtown's poor design and lack of security deviated from industry standards and contributed to Mrs. Dalton's death.
Police reports contained in the record indicate that sixty criminal incidents had been reported in or around the Foodtown store between January 1989 and the date of the Dalton incident, a two and one-half year period. These included thirty shopliftings, twelve thefts, four DWI offenses, four disorderly persons offenses, *221 four assaults, three occasions on which customers misplaced property, one instance of criminal mischief, one charge of trespassing, and one offense of possession of CDS. There were no robberies or attempted robberies.
None of the assaults bore any resemblance to the attack upon Mrs. Dalton. Two involved store employees who confronted alleged shoplifters or thieves. In a third instance, a man assaulted a police officer who had arrested his wife for disorderly conduct. The remaining assault involved a fight arising out of a car accident in the parking lot.
Foodtown moved for summary judgment. After hearing argument, the judge granted Foodtown's motion on April 13, 1995, citing plaintiff's failure to allege prior similar incidents necessary to establish foreseeability. The motion judge distinguished plaintiff's case from Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982), in which seven muggings in the parking lot were deemed to render foreseeable the likelihood of further criminal attacks, thus generating a duty to provide reasonable protective measures.
Plaintiff moved for reconsideration, but advanced no new arguments or proof. On May 26, 1995, the judge denied the motion for reconsideration, again stressing that Butler required prior similar incidents as a prerequisite to imposition of an actionable duty.
Plaintiff voluntarily dismissed the complaint as to Reardon, rendering final and appealable the summary judgment granted to Foodtown. On appeal, plaintiff argues that the judge erred in granting summary judgment solely because of the absence of prior similar offenses.
We affirm. The evidence contained in the record before us is legally insufficient to render foreseeable the likelihood of a serious criminal attack occurring in the Foodtown parking lot, and therefore is insufficient to create a duty to provide special security for the Foodtown lot. Accordingly, we conclude that Foodtown owed no duty to plaintiff's decedent to provide security or to post *222 warnings in the parking lot, and that Foodtown is entitled to judgment as a matter of law.
Unlike the situation in Butler, there were no prior incidents of a nature that would render foreseeable the carjacking, assault, kidnapping and fatal gagging of a patron, or, indeed, any of those offenses. To the extent that a general theory of negligence was asserted, thus including a failure to warn,[1] we believe that any duty to warn patrons of the possibility of parking lot attacks would have been, at most, coextensive with the existence of a duty to provide security in the lot.
We do not deem the expert report, nor the factual basis upon which it was rendered, sufficient to create a factual issue. "[E]xpert testimony is useful to fact finders in determining whether a standard of conduct has been violated, but only after a legal duty has been found to exist. The question of whether a duty exists is a matter of law to be decided by the judge alone in the context of the circumstances of each case." Burroughs v. City of Atlantic City, 234 N.J. Super. 208, 220-21, 560 A.2d 725 (App.Div.), certif. denied, 117 N.J. 647, 569 A.2d 1345 (1989). "The foreseeability of harm is a significant consideration in the determination of a duty to exercise reasonable care." Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996). "`[I]t is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate.'" Id. at 572-73, 675 A.2d 209 (quoting Carter Lincoln-Mercury, Inc. v. EMAR Group, 135 N.J. 182, 194, 638 A.2d 1288 (1994)).
Among the factors properly considered in this case are the broad daylight time of the incident (rendering adequate illumination a non-issue; compare Picco v. Fords Diner, 113 N.J. Super. 465, 274 A.2d 301 (App.Div. 1971)) and the undisputed evidence *223 that there had been no prior criminal attacks against patrons in the Foodtown lot.
In Butler, supra, the Court recognized, as we do, that
[t]he historical classifications of the degrees of care owing to visitors upon land are undergoing gradual change in the law in favor of a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others.
[Butler, supra, 89 N.J. at 277, 445 A.2d 1141.]
Also recognized was the duty of the proprietor of premises to which the public is invited for business purposes to provide a reasonably safe place to do that which is within the scope of the invitation. Id. at 275, 445 A.2d 1141. Due care under all the circumstances is the proper measuring rod, and the question of foreseeability is that of the existence of an unreasonable risk or likelihood of harm. Id. at 276, 445 A.2d 1141.
In Butler, however, seven muggings had occurred on the Acme premises within one year's time, muggings of which the victim was unaware. Id. at 274, 445 A.2d 1141. No warnings had been posted to advise patrons of the possibility of attack. Id. at 275, 445 A.2d 1141. One guard attended to store security and to the parking lot. Id. at 274, 445 A.2d 1141. The Court recognized that foreseeability of criminal conduct was "apparent" and refused to allocate sole responsibility for security to government with its attendant police power. Id. at 277, 280, 445 A.2d 1141.
Neither the Supreme Court nor the Legislature has yet imposed upon all parking lot operators or stores with parking areas an absolute duty to maintain constant police-type protection of those areas. It may be arguable that courts should take notice of an alarming trend in "carjackings," an offense largely unknown until recent years. However, such offenses can easily occur in any parking lot, large or small, or indeed on any street or highway. Police protection against such widespread criminal incidents is one of the primary duties for which government exists. The Supreme Court made clear that "we do not intend an absolute obligation to prevent all crime." Id. at 279, 445 A.2d 1141. Rather, the Court *224 imposed a duty upon Acme to provide adequate security and to warn patrons of the danger, based upon foreseeability generated by the known, repeated history of attacks in its parking lot. Accord Genovay v. Fox, 50 N.J. Super. 538, 554-55, 143 A.2d 229 (App.Div. 1958), rev'd on other grounds, 29 N.J. 436, 149 A.2d 212 (1959).
While we believe that certain showings of fact, for example repeated carjackings or assaults upon persons in the immediate vicinity, or an extraordinary increase of such incidents in the community, see id. at 555, 143 A.2d 229, might well be sufficient to create a duty,[2] that threshold has not here been crossed.
We are mindful of the view of our dissenting colleague that "[s]ubstantial criminal activity had occurred in and around Foodtown" and that, in consequence, the question of Foodtown's duty to take reasonable security precautions for plaintiff should have been submitted to the jury. Our review of the record satisfies us that the dissent has overstated the nature and extent of the various incidents in and near the market, none of which hinted at an unusual potential for threat to the physical safety of patrons. This was not Dodge City.
Of greater concern is the dissent's apparent desire to send to a jury almost every case in which an allegation is made that a store *225 has failed to provide adequate security protection for its business invitees, free of the judicial hand in measuring foreseeability and in determining existence of a duty.
Contrary to the suggestion of the dissent, we do not interpret Butler to have created an absolute prior similar incidents rule, although the motion judge may have done so. Neither have we created such a rule in this case. We read Butler to have made the existence of prior similar incidents a highly significant, but not exclusive, factor for the court to consider in making its critical foreseeability/duty determination. In this respect, Butler is consistent with the most recent opinion of the California Supreme Court on this subject, Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 25 Cal. Rptr.2d 137, 863 P.2d 207 (1993).
The dissent relies heavily on the reasoning of that court in an earlier decision, Isaacs v. Huntington Memorial Hospital, 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653 (1985), which rejected a strict rule of law limiting a business premises operator's foreseeability of criminal acts only to cases in which prior similar acts had occurred on the same premises. Isaacs rejected this strict rule in favor of a "totality of circumstances" approach. Id. 211 Cal. Rptr. at 361-65, 695 P.2d at 659-61. In Ann M., however, the breadth of the Isaacs opinion was dramatically reconsidered and modified.[3] While not adopting a strict prior similar incidents rule, the California Supreme Court recognized the difficulty in ascertaining what degree of security is adequate to constitute effective deterrence, and concluded "that a high degree of foreseeability is required in order to find that the scope of a [shopping center owner's] duty of care includes the hiring of security guards." Ann M., supra, 25 *226 Cal. Rptr.2d 137, 863 P.2d at 215. Thus, that court said, "the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the ... premises." Ibid.
Much as we have done, the California court left open the possibility that, even absent prior similar incidents, other circumstances might create the degree of foreseeability sufficient to trigger a duty to provide security guards. Examples given were immediate proximity to a similar business establishment which has experienced violent crime on its premises, or evidence that a particular type of commercial property has become inherently subject to violent crime. Id. 25 Cal. Rptr.2d at 145 n. 7, 146 n. 8, 863 P.2d at 215 n. 7, 216 n. 8. Absent legislative action, we believe that the Ann M. analysis is entirely consistent with the business proprietor's general duty to guard its business invitees against reasonably foreseeable harm.[4]
We believe that the dissent has confused the issue of duty analysis, and wrongly seeks to surrender for a jury's fact-finding the legal determination of foreseeability in the context of determining existence and scope of a duty. See id. 25 Cal. Rptr.2d at 145, 863 P.2d at 215.
It is ironic that while the dissent has no difficulty in ceding to the jury the court's traditional role in addressing the policy considerations surrounding imposition of an actionable duty to provide security guards,[5] our Supreme Court has struggled mightily *227 to uphold legislative enactments that impose similar crime-prevention duties upon landowners. See, e.g., 515 Assocs. v. City of Newark, 132 N.J. 180, 623 A.2d 1366 (1993); Hudson Circle Servicenter v. Town of Kearny, 70 N.J. 289, 359 A.2d 862 (1976). Justice O'Hern's dissent in 515 Assocs. reminds us of the negative consequences of transferring the burden of police protection to private owners, who must then pass the costs on to tenants or customers. See 515 Assocs., supra, 132 N.J. at 200-01, 623 A.2d 1366 (O'Hern, J., dissenting).
The approach which we espouse, like that in Ann M., supra, takes account of the special nature of the policy questions here involved. If even legislative enactments of this nature are troublesome, we must not casually experiment with the duty created in Butler or the method of fixing that duty.
In this opinion we change no rule of law, nor do we seek to establish a strict prior similar incidents rule. We believe that the approach adopted by the California Supreme Court in Ann M., supra, is sound and consistent with Butler. As the motion judge found, plaintiff's showing in this case was insufficient to establish an actionable duty.
Affirmed.
*228 HUMPHREYS, J.A.D. (dissenting).
Kathleen Dalton, a seventy-nine year old widow, was about to enter her car one afternoon in July 1991. She had been shopping at the Foodtown Supermarket in Red Bank. Her car was parked in the Foodtown parking lot. She was attacked and forced into her car. Her assailant drove away with her. He covered her mouth with duct tape and suffocated her. He was later convicted of kidnapping, robbery, theft and murder.
Substantial criminal activity had occurred in and around Foodtown. The criminal activity was increasing. Nevertheless, security at Foodtown was non-existent. An expert on supermarket security was prepared to testify that the supermarket had violated and ignored industry standards for security in supermarkets, and that this had resulted in the robbery and murder of Kathleen Dalton.
The majority holds that under these facts the supermarket as a matter of law is under no duty to its patrons to provide for their security in the Foodtown parking lot. I disagree.

I
The majority has upheld the grant of a motion for summary judgment. Such a motion must be denied if the "competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995); see also Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 74, 110 A.2d 24 (1954). All favorable inferences must be drawn in favor of the party opposing the motion. Brill, supra, 142 N.J. at 536, 666 A.2d 146. "The `judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Id. at 540, 666 A.2d 146.
*229 The pertinent evidence considered in the light most favorable to the plaintiff and with all reasonable inferences being given to the plaintiff can be summarized as follows. A substantial amount of criminal activity had occurred and was occurring at Foodtown. Police reports indicated that some sixty criminal incidents were reported in and around the Foodtown store in the two and one-half years before the attack upon Kathleen Dalton. These included assaults, disorderly persons offenses, thefts, possession of CDS, criminal mischief, and DWI offenses. Moreover, criminal activity at Foodtown itself had been substantially increasing each year. In 1989, only four incidents occurred at Foodtown; in 1990, there were seven; in 1991, there were thirteen.
A security consultant engaged by plaintiff submitted a report on Foodtown's failure to comply with industry standards for supermarket security. The consultant had participated in the development and design of numerous retail store facilities for K-Mart and Woolworth Department Stores as well as K-Mart food stores throughout the East and in New Jersey. The stores were designed to operate in suburban and urban central business districts. The security consultant's background included experience in facility design and security and in "management control methods to protect patrons from being exposed to dangerous conditions."
The security consultant's report contains the following. Foodtown is located in a "busy section of the city between two major streets and at a railroad crossing." The store "provided parking for approximately 150 cars located at the side of the market however activity in the area could not be observed from inside the building."
A liquor store was adjacent to Foodtown. Defendants admit that "`some guys used to sit around there and drink ... they used to hang around out there.'" Also, there is a Mobil gas station located on the edge of Foodtown's lot. This area is a "gathering place for loiterers. Police were frequently called to the area to investigate thefts, assaults, trespassing, disorderly persons and other criminal activities."
*230 The security consultant states in his report that the parking lot was not visible from the store. Foodtown did not employ any security guards nor did it provide any deterrent to criminal activity taking place in its parking lot. Plaintiff also alleges that Foodtown did not provide parking lot security in any of their Foodtown stores.
The security consultant further stated:
Prudent retailers design stores that face the front parking area not only for customer convenience but also to provide a deterrent to crime by increasing the likelihood that criminal activity will be `spotted' by store management or up-front store personnel and reported. Any side parking defeats this purpose and particularly in this case where the side wall was of solid masonry.... Having the parking area in direct view from the store also is a deterrent to loitering and potential assaults. In its Tips on How to Deter Robbery and Violence covering procedures used by the convenience store sector are found typical instructions used in training store personnel such as
"Observe if someone appears to be watching or loitering. If so, try to stare down the suspicious person. If he doesn't leave, call the police."
The security consultant continued:
Industry practice is for such large cooperatives [the defendant] to analyze and if necessary to recommend outside security measures be taken to assure safe parking lots as well, which the cooperative failed to do for this Foodtown even though it was known to be located in an area where criminal conduct could be reasonably anticipated.
The security consultant concluded:
Where assaults on patrons could reasonably be foreseen due to the absence of any deterrent to crime in an area that was hidden from view, that attracted loiterers and that had a history of criminal activity, customary standards of care in the shopping center industry require proprietors to provide adequate security measures to safeguard patrons such as the use of uniformed guards, to schedule periodic inspection of the parking area by store personnel and to provide means of visibility of the lot from the store through window openings.
....
Because industry standards of care were not followed or were ignored by Foodtown, ... dangerous conditions that were known or should have been known to the defendants were allowed to exist. As a result of the negligence, carelessness and disregard for the safety of the plaintiff, Kathleen Dalton, she was assaulted and subsequently murdered by an assailant roaming the store's blind parking area and forcibly entering the plaintiff's car unobserved and undetected by defendants' store personnel.

*231 II
Whether a defendant owes a legal duty is "generally considered" a question of law for the court to decide. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996). Foreseeability of harm is a significant consideration in the determination of a duty to exercise reasonable care. Id. at 572, 675 A.2d 209. Thus, courts "consider initially the factor of foreseeability as the predicate for the duty to exercise reasonable care." Id. at 573, 675 A.2d 209.
The New Jersey Supreme Court in Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982), held that an owner of business premises owes a duty to exercise reasonable care to safeguard its customers from the criminal acts of third parties. The Court further held that it was for the jury to determine whether the business owner had breached that duty of reasonable care. Id. at 280, 445 A.2d 1141.
In Butler, a woman had been assaulted in the Acme parking lot in Montclair in November 1977, while she was loading groceries into her car. Id. at 274, 445 A.2d 1141. The parking lot was well lit. Ibid. Seven muggings had occurred within the past year, including five evening attacks during the preceding four month period. Ibid. Acme had hired off-duty police as security guards to combat the problem. Ibid. The only guard on duty at the time of the attack was inside the store and Acme did not have any signs warning patrons of potential danger. Id. at 275, 445 A.2d 1141.
Acme was granted a judgment notwithstanding the verdict. Ibid. We reversed and the Supreme Court affirmed our reversal. The Supreme Court said:
The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation.... The measure of that care has been described as `due care under all the circumstances.' ... `Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others.' . .. If the reasonably prudent person would foresee danger resulting from another's voluntary criminal *232 acts, the fact that another's actions are beyond defendant's control does not preclude liability.... Foreseeability of the risk that criminal acts of others would cause harm is the crucial factor.

....
The historical classifications of the degrees of care owing to visitors upon land are undergoing gradual change in the law in favor of a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others.

....
With respect to the allocation of costs issue, in the modern context of merchandising, our placement of these costs is consistent with the principles of the common law. Just as it is deemed fair for the owners and therefore indirectly the tenants of an apartment building, ... or the operators and patrons of a parking lot, ... to bear the costs of avoiding negligence, it is fair that the costs of negligent failure to protect against crime be similarly borne by the operators and indirectly patrons of such shopping facilities.

[Ibid. at 275-277, 445 A.2d 1141 (citations omitted) (emphasis added).]
The Court quoted from the Restatement (Second) of Torts, § 344 (1965), as to the duty owed by a storeowner to protect its patrons from the acts of third parties. Id. at 280, 445 A.2d 1141. The Court concluded:

Thus under both Restatement, (Second) of Torts, § 344, supra, and the prior decisions of this Court, it was for the jury to determine if Acme exercised reasonable care in the performance of its duty to safeguard its business invitees from the criminal acts of third persons. Here, it was at least reasonable for the jury to determine that absent warnings, hiring one guard who primarily remained inside the store was an insufficient response in light of the known, repeated history of attacks on the premises.
[Id. at 280, 445 A.2d 1141 (emphasis added).]
As to plaintiff's lack of expert testimony on the standard of care, the Court said:
Obviously, such testimony would be an aid to a jury and its use is encouraged in future cases. But its absence is not fatal. The jury's finding on the reasonableness of defendant's behavior was one where `fair minded men may honestly differ as to the conclusion to be drawn from disputed facts' and was properly submitted to the jury.
[Id. at 283-284, 445 A.2d 1141 (emphasis added).]
The Court summarized its holding as follows:

*233 In the last analysis then:
Whether a duty exists is ultimately a question of fairness. The inquiry involves weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.
[Goldberg v. Housing Authority, supra, 38 N.J. at 583, 186 A.2d 291.]
Here, because the business invitor is in the best position to provide either warnings or adequate protection for its patrons when the risk of injury is prevalent under certain conditions, and because the public interest lies in providing a reasonably safe place for a patron to shop, we affirm the judgment of the Appellate Division.
[Id. at 284, 445 A.2d 1141.]
To escape the broad reach of Butler, the majority apparently attempts to limit Butler's holding, with only a few exceptions, to instances in which prior similar criminal acts had occurred. Under that view, Foodtown would only have a duty to take reasonable precautions to protect its customers from criminal attack if there had been "for example repeated carjackings or assaults upon persons in the immediate vicinity, or an extraordinary increase of such incidents in the community ...," or possibly a type of commercial property "inherently" subject to violent crime. Ante at 223-25 & 225, 679 A.2d at 1233-34 & 1234.
My colleagues also embrace the majority opinion in Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 25 Cal. Rptr.2d 137, 863 P.2d 207 (1993) in which a "refinement" (id. 25 Cal. Rptr.2d at 145, 863 P.2d at 215) of the prior similar incidents rule is created. The refinement is that a "high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards."; and that "the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." Id. 25 Cal. Rptr.2d at 145, 863 P.2d at 215 (emphasis added). The majority in the present case finds that the "approach" in Ann M. is "sound and consistent with Butler." Ante at 227, 679 A.2d at 1235.[1]
*234 The New Jersey Supreme Court in Butler did not expressly adopt my colleagues' limitations upon its holding. Nor is there any indication that the Court impliedly adopted such limitations. On the contrary, the broad language in Butler quoted above compels the conclusion that the Butler Court intended no such narrow interpretation of its ruling.
Furthermore, subsequent New Jersey cases have not given Butler a restrictive interpretation. See Kuzmicz v. Ivy Hill Park Apts., 282 N.J. Super. 513, 521, 660 A.2d 1208 (App.Div.), certif. granted, 143 N.J. 322, 670 A.2d 1063 (1995) (Butler extended to require landlord to take reasonable steps to protect a tenant from criminal attack on adjoining property); see also Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222 (1991) (patron of a restaurant assaulted in restaurant's parking lot successfully sued restaurant for, among other things, failing to provide adequate security in lot). Thus, the Butler decision affords no support for the restrictive position adopted by the majority.
Nor does the weight of modern out of State authorities support the majority decision. Essentially, the majority has adopted the "prior similar incidents" rule with its refinement in Ann M., supra. Under that rule, a business proprietor, has, with only rare exceptions, no duty to take reasonable precautions to protect its patrons from criminal attack in the absence of prior repeated similar criminal incidents. In the past, some courts have espoused that rule. See cases cited in Marjorie A. Caner, Annotation, *235 Liability of Owner or Operator of Shopping Center, or Business Housed therein, for Injury to Patron on Premises from Criminal Attack by Third Party, 31 A.L.R.5th 550 (1995); James L. Isham, Annotation, Parking Facility Proprietor's Liability for Criminal Attack on Patron, 49 A.L.R.4th 1257 (1986); see also Deborah T. Landis, Annotation, Liability of Owner or Operator of Shopping Center, or Business Housed therein, for Injury to Patron on Premises from Criminal Attack by Third Party, 93 A.L.R.3d 999 (1979). However, more recently, many courts have jettisoned the rule.
As stated by the Supreme Court of Idaho, "[t]he solid and growing national trend has been toward the rejection of the `prior similar incidents' rule." Sharp v. W.H. Moore, Inc., 118 Idaho 297, 796 P.2d 506, 510 (1990). Accord, Small v. McKennan Hosp., 403 N.W.2d 410, 417 (S.D. 1987) (strict adherence to the prior similar acts rule "is unduly restrictive and places too great a burden on the plaintiff"); Whittaker v. Saraceno, 418 Mass. 196, 635 N.E.2d 1185, 1188 (1994) ("the previous occurrence of similar criminal acts on or near a defendant's premises is a circumstance to consider, but the foreseeability question is not conclusively answered in favor of a defendant landlord if there has been no prior similar criminal act"); Hickman v. Warehouse Beer Sys., Inc., 86 Ohio App.3d 271, 620 N.E.2d 949, 953 (1993) (totality of the circumstances is a "better indicator to establish knowledge of [the] defendant than focusing in on any particular criminal occurrences"); Shea v. Preservation Chicago, Inc., 206 Ill. App.3d 657, 151 Ill.Dec. 749, 565 N.E.2d 20 (1990) (rather than a rigid application of the prior incidents rule, the proper inquiry is to consider all relevant circumstances in order to determine whether a landlord has assumed the duty to protect the tenant from reasonably foreseeable criminal attacks); Jardel Co., Inc. v. Hughes, 523 A.2d 518, 525 (Del. 1987) (Foreseeability standard is not limited to specific crimes; "[s]o called `property crimes,' such as shoplifting, may turn violent if a chase ensues and ... family quarrels may become violent with the risk that deadly weapons may be used. Moreover, the repetition of criminal activity, regardless of its mix, *236 may be sufficient to place the property owners on notice of the likelihood that personal injury, not merely property loss, will result"); Small v. McKennan Hosp., 437 N.W.2d 194, 201 (S.D. 1989) ("Failure to prove any criminal activity in the area is not fatal to the submission of the foreseeability issue to the jury, because criminal assaults occur in all neighborhoods.... A violent criminal activity can be foreseeable simply upon common experience"); Samson v. Saginaw Professional Building, Inc., 393 Mich. 393, 224 N.W.2d 843, 849 (1975) (no prior incidents could possibly indicate a very low probability of an event occurring in the future but this low probability must be balanced against the magnitude of the potential harm involved to determine whether or not inaction under these circumstances is reasonable; "reasonableness, as foreseeability, is normally a question for the jury to determine"); Rowe v. State Bank of Lombard, 125 Ill.2d 203, 126 Ill.Dec. 519, 531 N.E.2d 1358, 1369 (1988) (absence of any past violent crimes at an office park does not preclude liability of the owner of the park to persons working there who were attacked); Galloway v. Bankers Trust Co., 420 N.W.2d 437, 439-440 (Iowa 1988) (prior non-violent incidents may provide a basis for a finding of foreseeability of "personal confrontation crimes"; evidence of foreseeability fortified by report of security consultant); Seibert v. Vic Regnier Builders, Inc. 253 Kan. 540, 856 P.2d 1332, 1339 (1993) (in suit by a person shot in an armed robbery in a parking lot of a shopping center, the totality of the circumstances, not prior similar acts, is the better reasoned basis for determining foreseeability); Morgan v. Bucks Assocs., 428 F. Supp. 546, 550 (E.D.Pa. 1977) (numerous car thefts occurring in a parking lot are sufficient for a jury to determine that defendant knew or should have known that a visitor might be assaulted); Garner v. McGinty, 771 S.W.2d, 242, 248 (Tex. Ct. App. 1989) (totality of the circumstances is the correct standard; "lack of prior similar incidents does not necessarily preclude a finding of foreseeability"); Kendrick v. Allright Parking, 846 S.W.2d 453, 458 (Tex. Ct. App. 1992) (lack of specific incidents of prior criminal activities not conclusive on the issue of foreseeability); Allright, Inc. v. Pearson, 711 *237 S.W.2d 686, 690 (Tex. Ct. App. 1986), (in suit by person robbed at gunpoint in parking garage; "fact that an event has not previously occurred is neither conclusive on the issue of its foreseeability nor dispositive of a duty to reasonably anticipate its occurrence"), aff'd in part, rev'd in part, 735 S.W.2d 240 (Tex. 1987); Onciano v. Golden Palace Restaurant, Inc., 219 Cal. App.3d 385, 268 Cal. Rptr. 96 (1990) (prior similar incidents is an important factor to be considered in determining foreseeability, but "lack of such incidents does not by itself negate the foreseeability as a matter of law"; "foreseeability is measured by all of the circumstances"); Brock v. Watts Realty Co., Inc. 582 So.2d, 438, 440-441 (Ala. 1991) (landlord's duty to reasonably provide protection from criminal attack does not have to be implied from prior similar occurrences on the leased premises); Willie v. American Casualty Co., 547 So.2d 1075, 1083 (La. Ct. App. 1989) (some level of criminal activity could impose a duty to post warnings or increase security; what crime is foreseeable under what circumstances is a question of fact); Mullins v. Pine Manor College, 389 Mass. 47, 449 N.E.2d 331, 337 (1983) (rule requiring evidence of prior criminal acts rejected as leading to arbitrary results and distinctions); Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 641 So.2d 1186, 1192 (Miss. 1994) (amount and type of criminal activity in general vicinity of business' premises is a factor in determining foreseeability); Zacharias, The Politics of Torts, 95 Yale L.J. 698 (1986) (stores such as supermarkets attract crime and should be liable for their negligence in providing security for their customers in the stores and their parking lots); see also Michael J. Yelnosky, Business Inviters' Duty to Protect Invitees from Criminal Acts, 134 U.Pa. L.Rev. 883 (1986) (general criminal activity occurring on or near business premises can be sufficient to give rise to duty to protect against violent attack in a jurisdiction which has adopted the Restatement (Second) of Torts, § 344).
The prior similar incidents rule was subjected to scathing criticism by the Supreme Court of California in Isaacs v. Huntington *238 Memorial Hosp., 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653, 659 (1985).
The Court said:
This rule is fatally flawed in numerous respects. First, the rule leads to results which are contrary to public policy. The rule has the effect of discouraging landowners from taking adequate measures to protect premises which they know are dangerous. This result contravenes the policy of preventing future harm. Moreover, under the rule, the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but is inimical to the important policy of compensating injured parties. Surely, a landowner should not get one free assault before he can be held liable for criminal acts which occur on his property.
Second, a rule which limits evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions.... Under this rule, there is uncertainty as to how "similar" the prior incidents must be to satisfy the rule. The rule raises a number of other troubling questions. For example, how close in time do the prior incidents have to be? How near in location must they be? The rule invites different courts to enunciate different standards of foreseeability based on their resolution of these questions.
Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts. This court has already rejected that notion. "`The mere fact that a particular kind of an accident has not happened before does not ... show that such accident is one which might not reasonably have been anticipated.' ... Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts." ...
Finally, the "prior similar incidents" rule improperly removes too many cases from the jury's consideration. It is well established that foreseeability is ordinarily a question of fact....
There is a general reluctance to remove foreseeability questions from the jury.... Foreseeability "`is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' ... One may be held accountable for creating even `"the risk of a slight possibility of injury if a reasonably prudent [person] would not do so."'"
....
Thus, foreseeability is determined in light of all the circumstances and not by a rigid application of a mechanical "prior similars" rule.... As this court has held, "what is required to be foreseeable is the general character of the event or harm ... not its precise nature or manner of occurrence." ... Prior similar incidents are helpful to determine foreseeability but they are not necessary. A rule that limits evidence of foreseeability to prior similar incidents deprives the jury of its role in determining that question.

*239 [Isaacs v. Huntington Memorial Hospital, 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653, 658-659 (1985) (citations omitted).]
Cf. Ann M. v. Pacific Plaza Shopping Center, supra, 6 Cal.4th 666, 25 Cal. Rptr.2d 137, 863 P.2d 207.
Other jurisdictions have severely criticized the prior similar incidents rule. In Sharp, supra, 796 P.2d at 510, the Supreme Court of Idaho said:
Reduced to its essence, the "prior similar incidents" requirement translates into the familiar but fallacious saying in negligence law that every dog gets one free bite before its owner can be held to be negligent for failing to control the dog. That license which is refused to a dog's owner should be withheld from a building's owner and the owner's agents as well. There is no "one free rape" rule in Idaho.
The "prior similar incidents" requirement is not only too demanding, it violates the cardinal negligence law principle that only the general risk of harm need be foreseen, not the specific mechanism of injury.... Such a requirement would remove far too many issues from the jury's consideration. Foreseeability is ordinarily a question of fact.
[(Citations omitted).]
In Ronk v. Parking Concepts of Texas, Inc., 711 S.W.2d 409, 418 (Tex. Ct. App. 1986), the court in adopting the totality of circumstances rule said: "A rule which limits proof of foreseeability to evidence of prior similar incidents automatically precludes recovery to first-injured victims. Such a rule is inherently unfair and contrary to public policy."; see also Business Inviters' Duty to Protect Invitees from Criminal Acts, supra, 134 U.Pa.L.Rev. 883 (criticizing the prior similar incidents rule, and other specific rules, for failing to recognize the "prevalence of the invitee victimization problem, the deterrent effect of adequate and properly implemented security systems, and the propriety of imposing liability on the business inviter ....").
In view of the sweeping language in the Butler decision, I perceive little likelihood that New Jersey will follow the discredited prior similar incidents rule or its refinement in Ann M. In contrast, the totality of circumstances approach is well rooted in New Jersey jurisprudence. State v. Jones, 143 N.J. 4, 20, 667 A.2d 1043 (1995) (Court looked at "totality of circumstances" to determine whether police acted in an objectively reasonable manner); State v. Smith, 134 N.J. 599, 621, 637 A.2d 158 (1994) (Court *240 looked at totality of the circumstances to test the legality of a patdown search); State v. New Jersey Trade Waste Assoc., 96 N.J. 8, 25, 472 A.2d 1050 (1984) (totality of circumstances test will be used in determining whether a course of conduct constitutes a single conspiracy or two or more separate conspiracies).[2]
Applying the totality of circumstances approach and giving plaintiff the benefit of reasonable inferences under summary judgment principles, more than a sufficient showing has been made to permit plaintiff's case to go forward. To foresee the likelihood of crime is unfortunately not difficult today. The omnipresence of crime is irrefutable. It is an "inescapable fact of modern life. Its presence threatens the suburban enclave as well as the inner city." Trentacost v. Brussel, 82 N.J. 214, 227, 412 A.2d 436 (1980). Large numbers of people congregate in supermarkets. Parking lots of supermarkets are not "likely to be crime free." See Seibert, supra, 856 P.2d at 1339; see also Business Inviter's Duty to Protect Invitees from Criminal Acts, supra, 134 U.Pa.L.Rev. at 904 (outside parking lots are high risk areas for crime). Predators such as the killer of Kathleen Dalton, go where the prey is.
Owners of supermarkets in 1991 were surely not unaware of these basic facts or of the fact that crime in New Jersey had escalated drastically between 1977, when Helen Butler was attacked, and 1991 when Kathleen Dalton was murdered. In 1977, the total crime index in the State of New Jersey was 373,450. By *241 1991, the crime index had risen to 421,863. Violent crime rose even more sharply. In 1977, it was 28,732. By 1991, violent crime had climbed to almost 50,000. See State of New Jersey Uniform Crime Reports (1977 and 1991). The clairvoyance of Cassandra is not needed to foresee an attack in a supermarket parking lot invisible from the store and in a vicinity in which numerous crimes had occurred over the prior two and one-half years.
Furthermore, Kathleen Dalton was a victim of carjacking, a highly publicized criminal phenomena which emerged in the late eighties and early nineties. The legislative history of the federal carjacking statute of 1992 (18 U.S.C. § 2119) reflects the widespread public knowledge and concern about this crime. One Congressman said "[p]eople are outraged and terrified by the heinous carjacking epidemic currently upon us." See 138 Cong. Rec. H11,819. Senator Lautenberg of New Jersey referred to the "emerging problem of violent carjacking" and noted that it is "especially prevalent in New Jersey...." See 138 Cong. Rec. S17,961. Another senator referred to carjacking as a national problem which was "becoming more and more linked to violence  to severe beatings, and even murder." Ibid. In 1993, New Jersey enacted a carjacking statute. N.J.S.A. 2C:15-2. Carjacking was made a crime of the first degree carrying a sentence of ten to thirty years and a minimum parole ineligibility term of at least five years. N.J.S.A. 2C:15-2(b).
A supermarket owner in an urban or suburban location can hardly plead ignorance of this rising crescendo of virulent violence. The supermarket here had an adjacent liquor store and a nearby gas station which was a haven for loiterers. Some sixty criminal offenses had occurred in or about its premises in the two and one-half years before Kathleen Dalton's abduction and murder. Criminal incidents on the supermarket's premises had sharply increased from 1989 through 1991. Despite these facts, the supermarket provided no security for its customers. If security guards were too costly, the supermarket could have still met "customary standards of care in the shopping center industry" by having *242 "periodic inspection of the parking area by store personnel" and by providing "means of visibility of the lot from the store through window openings." (See excerpts from security consultant's report supra at 230, 679 A.2d at 1237). Instead Foodtown did nothing!
Moreover, a reasonable inference from the discovery and the security consultant's report is that the supermarket never made an inquiry as to whether a security problem was present, and, if so, what security measures should be considered. See Romaguera v. Piccadilly Cafeterias, Inc., 648 So.2d 1000 (La. Ct. App. 1994) (in "the modern urban environment," a business which provides a parking lot for customers should determine whether security is required and, if so, provide it). See also 515 Assocs. v. City of Newark, 132 N.J. 180, 189, 623 A.2d 1366 (1993) (upheld ordinance requiring owners of apartment houses to provide armed security guards); Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 305-311, 359 A.2d 862 (1976) (upheld ordinance requiring parking lot to be supervised by a uniformed guard). In sum, the foreseeability of criminal attack under the facts here should have been determined at trial, not on a motion for summary judgment.

III
Denying recovery to tort victims by adhering to inflexible and outmoded doctrines runs counter to fundamental principles of tort law. In People Express Airlines, Inc. v. Consolidated Rail Corp., 100 N.J. 246, 254-255, 495 A.2d 107 (1985), the Court declined to follow the common law doctrine which barred recovery for economic loss unless the negligent conduct also caused physical harm. The comments of the Court about the purposes and flexibility of tort law are applicable here. The Court said:
... The asserted inability to fix chrystalline formulae for recovery on the differing facts of future cases simply does not justify the wholesale rejection of recovery in all cases.
....
The torts process, like the law itself, is a human institution designed to accomplish certain social objectives. One objective is to ensure that innocent victims have *243 avenues of legal redress, absent a contrary, overriding public policy.... This reflects the overarching purpose of tort law; that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct.
Other policies underlie this fundamental purpose. Imposing liability on defendants for their negligent conduct discourages others from similar tortious behavior, fosters safer products to aid our daily tasks, vindicates reasonable conduct that has regard for the safety of others, and, ultimately, shifts the risk of loss and associated costs of dangerous activities to those who should be and are best able to bear them. Although these policies may be unevenly reflected or imperfectly articulated in any particular case, we strive to ensure that the application of negligence doctrine advances the fundamental purpose of tort law and does not unnecessarily or arbitrarily foreclose redress based on formalisms or technicalisms.
[Id. at 254-255, 495 A.2d 107 (citations omitted).]
Perhaps the most singular and enduring quality of tort law is its flexibility as it is applied to the myriad patterns of modern day life. Tort law resists the foreclosing of "redress" to injured parties based on "formalisms", "technicalisms" and "chrystalline formulae" such as the prior similar criminal incidents rule and its refinement in Ann M. The totality of the circumstances approach best accords with the fundamental purposes of tort law as set forth in Butler and exemplified by the "solid and growing national trend" of authority. Sharp v. W.H. Moore, Inc., supra 796 P.2d at 510.
I would reverse and remand for a trial to determine whether the supermarket violated its duty to take reasonable precautions for the safety of its business invitee, Kathleen Dalton, when, despite a history of increasing and substantial criminal activity, the supermarket provided no security for its patrons in its parking lot and made no inquiry as to whether some form of security was required on the "blind" side of its business premises.
NOTES
[1] See Butler, supra, 89 N.J. at 278, 445 A.2d 1141.
[2] See also Kuzmicz v. Ivy Hill Park Apartments, 282 N.J. Super. 513, 516-17, 519-22, 660 A.2d 1208 (App.Div.), certif. granted, 143 N.J. 322, 670 A.2d 1063 (1995)(notice of murders and other violent crimes on adjacent property created duty of landlord to tenants).

We note that the dissent refers to Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222 (1991). In Blazovic, the negligence of the restaurant-bar defendant was asserted to arise from failure to exercise reasonable care in disbursing alcoholic beverages to plaintiff's assailants, as well as for failure to provide adequate lighting and security. Id. at 94, 590 A.2d 222. Both plaintiff and his assailants had been patrons at the bar. Id. at 93, 590 A.2d 222. The negligence asserted did not involve failure to guard against a criminal assault unrelated to the defendant's activities, but to an assault alleged to be consequential to the assailants' consumption of alcohol on the defendant's premises and defendant's failure to protect its patrons from such foreseeable action by providing adequate parking lot security and lighting at night.
[3] The court said:

Unfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable. Upon further reflection and in light of the increase in violent crime, refinement of the rule enunciated in Isaacs ... is required.
[Ann M., supra, 25 Cal. Rptr.2d 137, 863 P.2d at 215.]
[4] Some of the authorities in accord are: J.C. Penney Co. v. Spivey, 215 Ga. App. 680, 452 S.E.2d 191 (1994), cert. denied (1995); Taylor v. Hocker, 101 Ill. App.3d 639, 57 Ill.Dec. 112, 428 N.E.2d 662 (1981); Whittaker v. Saraceno, 418 Mass. 196, 635 N.E.2d 1185 (1994); K.L. v. Riverside Medical Ctr., 524 N.W.2d 300 (Minn. Ct. App. 1994); Madden v. C & K Barbecue Carryout, Inc., 758 S.W.2d 59 (Mo. 1988) (en banc); Erichsen v. No-Frills Supermarkets, 246 Neb. 238, 518 N.W.2d 116 (1994).
[5] See Goldberg v. Housing Auth., 38 N.J. 578, 583, 186 A.2d 291 (1962).

The question whether a private party must provide protection for another is not solved merely by recourse to "foreseeability." Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide "police" protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.
The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.
[Ibid.]
[1] The majority cites five cases as "Some of the cases in accord (with the Ann M. analysis)". Ante at 226, 679 A.2d at 1235. Two of the five cases appear to adopt the totality of the circumstances approach. Whittaker v. Saraceno, 418 Mass. 196, 635 N.E.2d 1185, 1188 (1994) ("All the circumstances are examined in defining the scope of a duty of care based on the reasonable foreseeability of harm"); Madden v. C & K Barbecue Carryout, Inc., 758 S.W.2d 59, 62 (Mo. 1988). (Business owners are under a duty to protect their invitees from criminal attack "depending upon the facts and circumstances of a given case"). Two of the five cases, J.C. Penney Co. v. Spivey, 215 Ga. App. 680, 452 S.E.2d 191 (1994) and Taylor v. Hocker, 101 Ill. App.3d 639, 57 Ill.Dec. 112, 428 N.E.2d 662 (1981) follow the outmoded, prior similar criminal incidents rule. In addition, J.C. Penney Co. is later criticized and not followed in Piggly Wiggly Southern Inc. v. Snowden, 219 Ga. App. 148, 464 S.E.2d 220 (1995). Only K.L. v. Riverside Medical Center, 524 N.W.2d 300 (Minn. Ct. App. 1994) is in accord with the Ann M. analysis.
[2] The totality of the circumstances approach does not, as the majority appears to contend, "surrender" to the jury the question of whether a duty exists; nor have the many courts which have adopted the totality of the circumstances "Confused the issue of duty analysis." Ante at 226, 679 A.2d at 1235. A judge will retain the ability to determine in a given case whether the totality of the evidence bearing on the existence of a duty is "so one-sided that one party must prevail as a matter of law," Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995) quoting from Anderson v. Liberty Lobby, Inc., 477 U.S. 242, at 250, 106 S.Ct. 2505, at 2512, 91 L.Ed.2d 202, at 214. Here the evidence is clearly not "so one-sided" and the motion for summary judgment should not have been granted.